**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOYCE E. SCHMELZER, <br><br> Plaintiff, <br><br> v. <br><br> ANIMAL WELLNESS CENTER OF MONEE, LLC, *et al.*, <br><br> Defendants. | No. 18-cv-01253 <br> Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joyce E. Schmelzer (Schmelzer) brought suit against Defendants Animal Wellness Center of Monee, LLC (AWC), Lynlee Wessels-Marhanka (Lynlee), and Scott Marhanka (Scott) (collectively, Defendants), seeking relief under Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA) and under 26 U.S.C § 7434. R. 84, TAC.[1] Defendants now move for summary judgement pursuant to Federal Rule of Civil Procedure 56. R. 92, Defs.' Mot. Summ. J.[2] For the reasons that follow, Defendants' Motion for Summary Judgment is granted in part and denied in part.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]Even though the title of the motion only references AWC, the body of the motion raises arguments on behalf of all Defendants (R. 92, Memo. Summ. J. at 3–11), which Schmelzer addressed in her Response (R. 100-4, Memo. Resp. at 5–14). Accordingly, the Court construes the motion as being brought on behalf of all Defendants.

## Background

The following undisputed facts are set forth as favorably to Schmelzer, the non-movant, as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the Court assumes the truth of the undisputed facts, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

AWC is an animal hospital. R. 109-2, Lynlee Dep. Tr. 78:13–18. Lynlee is the majority owner of AWC. *Id.* Lynlee's husband, Scott, and her father, Edward Wessels (Edward), own less than 10% of AWC. *Id.*; R. 109-3, Scott Dep. Tr. 149:4–5. AWC hired Schmelzer in 2004, initially as a receptionist and then later as an office manager. Pl.'s Resp. DSOF ¶ 3.[3] AWC established an IRA for its employees. *Id.* ¶ 4. The participants of the IRA plan included Schmelzer, Lynlee, and Scott. *Id.* ¶ 18.

In July 2016, the AWC experienced some financial difficulties. Pl.'s Resp. DSOF ¶¶ 17, 21. Edward attempted to balance the lack of cash flow by not forwarding contributions removed from employees' paychecks into the employees' IRAs. *Id.* ¶¶ 17, 20–22. This resulted in deductions of the IRA contribution amount from employees' paychecks, but no corresponding deposit into their IRA accounts. *Id.* ¶ 19. Lynlee and Scott did not learn of this until May 2017, when Scott took over the books for AWC. *Id.* ¶¶ 19, 23–24.

---

[3] Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for Defendants' Statement of Facts (R. 93); "Pl.'s Resp. DSOF" for Schmelzer's Response to Defendants' Statement of Facts (R. 100-2); "PSOAF" for Schmelzer's Statement of Additional Facts (R. 100-3); and "Defs.' Resp. PSOAF" for Defendants' Response to Schmelzer's Statement of Additional Facts (R. 103).

When Scott took over financial responsibilities from Edward in May 2017, he continued the practice of not sending monthly payments to the employees' IRA plan. Defs.' Resp. PSOAF ¶ 3. On or about July 5, 2017, Don Schmelzer, Schmelzer's husband, called Scott to inquire whether the 401(k) account had been funded. *Id.* ¶ 4. Between July 5 and July 8, 2017, Schmelzer communicated with her co-workers and Scott about AWC's failure to fund the IRA account *Id.* ¶ 5. Scott informed the IRA Plan participants that there would be a meeting on July 8, 2017 to discuss the IRA accounts. Pl.'s Resp. DSOF ¶ 29. At the July 8 meeting, AWC informed the participants who attended the meeting what occurred and how they were seeking loans to repay the money to the IRA accounts. *Id.* ¶ 30. Schmelzer, who attended the meeting, was angry and agitated. *Id.* ¶ 31. Schmelzer was the most vocal of the employees who attended the meeting. Defs.' Resp. PSOAF ¶ 8. Schmelzer accused the Marhankas of stealing from the plan participants. *Id.* After the July 8 meeting, Schmelzer told the Marhankas to stop taking money out of her paycheck. *Id.* ¶ 9.

On July 10, 2017, Schmelzer prepared and submitted to Scott a proposed payment plan agreement on behalf of the plan participants. Defs.' Resp. PSOF ¶ 11. Schmelzer contacted the Department of Labor (DOL) twice in July 2017, informing the DOL that AWC had not made employee contributions since June 2016. *Id.* ¶ 13. On July 21, 2017 Schmelzer requested that the Department of Labor proceed with a formal complaint and contact AWC. *Id.*

On July 26, 2017, a DOL investigator called Scott about the missing contributions. Pl.'s Resp. DSOF ¶ 36; Defs.' Resp. PSOAF ¶ 17. Scott informed the

investigator that AWC was already in the process of taking out loans to pay for the non-deposited IRA funds. Pl.'s Resp. DSOF ¶ 36. On July 27, 2017, Scott received an email letter from the DOL stating that the DOL received information that AWC failed to forward IRA contributions since June 2016. Pl.'s Resp. DSOF ¶ 35; Defs.' Resp. PSOAF ¶ 17.

After Schmelzer's husband brought the IRA funding issue to Scott's attention, Schmelzer noticed a change in Lynlee's demeanor. Defs.' Resp. PSOAF ¶ 6. Schmelzer found Lynlee cold towards her. *Id.* Schmelzer also found Lynlee openly hostile to her in July 2017. *Id.* ¶ 14. After the DOL contacted the Marhankas, other employees observed that Lynlee was cold and unprofessional towards Schmelzer, going so far as refusing to speak with her directly. *Id.* ¶¶ 15–16.

On July 31, 2017, Schmelzer and Lynlee were at the reception desk in the office, when Lynlee passed a note to another receptionist about an upcoming surgery. Pl.'s Resp. DSOF ¶ 63. Schmelzer then followed Lynlee into her office and said, "why the fuck are you not talking to me." *Id.* ¶¶ 39, 64. Lynlee, in response, just stared at Schmelzer. *Id.* ¶ 40. Lynlee asked, "do you want me to leave." *Id.* ¶ 41. Lynlee responded "yes." *Id.* ¶ 43. After that, Schmelzer told another employee that she "just got fired," and she gathered her personal belongings and left. Defs.' Resp. PSOF ¶ 31. Lynlee never told Schmelzer that she was fired. Pl.'s Resp. DSOF ¶ 48.

On August 3, 2017, Schmelzer spoke with a DOL representative. Defs.' Resp. PSOAF ¶ 32. The DOL representative apologized to Schmelzer, if her call to AWC made Schmelzer's situation worse. *Id.* ¶ 33. Schmelzer responded that it was her

choice to go into the owner's office and use the "f" word with the owner out of frustration. *Id.*

Schmelzer subsequently filed a complaint against AWC, Lynlee, and Scott. The operative complaint is a two-count Third Amended Complaint (TAC). TAC; R. 87, 11/08/19 Order. Count I asserts a claim against all Defendants for retaliation and interference in violation of Section 510 of ERISA, and Count II alleges a violation of 26 U.S.C § 7434 against AWC because AWC willfully made false and fraudulent information returns. TAC. Defendants now move for summary judgement.

## Standard of Review

### I.    Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most

favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

## II.    Subject Matter Jurisdiction

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digit., Inc. v. Sears Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Digit.*, 572 F.3d at 443–44). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction

6

exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Digit.*, 572 F.3d at 444). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digit.*, 572 F.3d at 444 (internal citations omitted).

### III.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### Analysis

### I.   Request to Strike Schmelzer's Statements of Additional Fact and Certain Exhibits

As a preliminary matter, the Court must address several issues raised by the Defendants' Reply about the admissibility of evidence relied upon by Schmelzer in response to Defendants' summary judgment motion. First, Defendants contend that Schmelzer's additional statements of facts are argumentative. R. 102, Reply at 1. Defendants are correct that "[l]egal arguments do not go in the separate statements of fact." *ABC Acquisition Co., LLC v. AIP Prods. Corp.*, 2020 WL 4607247, at \*7 (N.D. Ill. Aug. 11, 2020) (citing *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("[i]t is inappropriate to make legal arguments in a Rule 56.1 statement of facts"); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1017–18 (N.D. Ill. 2018)). True, some of Schmelzer's Local Rule 56.1 statements and responses include legal arguments, but so too do some of Defendants' Local Rule 56.1 statements and responses. The Court will not consider the portions of the parties' Local Rule 56.1 submissions that make legal arguments and assert legal conclusions. *See Rivera*, 319 F. Supp. 3d at 1018 (collecting cases disregarding or affirming the decision to disregard argumentative statements of fact). But the Court declines to strike the noncompliant paragraphs, "as doing so would in some cases throw out a properly supported assertion along with a legal argument or conclusion." *Id.* Rather, the Court will consider the properly supported factual assertion but will disregard the portion of any factual statement that contains legal arguments or conclusions. *See id.* (citing *Minn. Life Ins. Co. v. Kagan*, 847 F. Supp. 2d 1088, 1093 (N.D. Ill. 2012) (denying motion to strike portions of Local Rule 56.1 statements containing legal conclusions but disregarding conclusions)); *Phillips v. Quality Terminal Servs., LLC*,

855 F. Supp. 2d 764, 771–72 (N.D. Ill. 2012) (same)). Where any such facts are material to the Court's analysis, the Court notes them within this Opinion.

Next, Defendants argue that Exhibits G, H, and I (declarations of Mandy Holt, Melinda White, and Jessica McCaslin, respectively) are hearsay statements "created by Schmelzer's counsel to attempt to create a question of fact and should be stricken or provided zero weight." Reply at 1 (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994)). It matters not that the *form* of the exhibits would not be admissible at trial (indeed, declarations usually are not admissible at trial), but rather the Court must determine whether the *content* would be admissible. *Winskunas* 23 F.3d at 1268; *see also Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). Defendants contend only that the declarations are "hearsay statements." Reply at 1. But Defendants do not point to any statements within the declarations themselves that are hearsay. Many of the statements contained within the declarations are the declarant's own observations or impressions, which is indisputably not hearsay. Based on Defendants' underdeveloped argument, the Court declines to strike the exhibits. To the extent Schmelzer's additional statements of material fact are supported by Exhibits G, H, or I, and Defendants objected to the cited material as hearsay, if such facts are material to the Court's analysis, the Court notes them within this Opinion.

Finally, Defendants argue that Exhibit E (Schmelzer's declaration and appended exhibits), should be stricken because it "does not purport to be part of the rule 56 filing and seems to be an attempt to defame Defendants in a public form."

Reply at 1. Schmelzer's declaration and the exhibits thereto are attached to and cited in support of Schmelzer's Rule 56.1 statement of additional facts, so it is not clear what Defendants mean when they argue that it "does not purport to be part of the rule 56 filing." Defendants also fail to cite authority in support of their argument that Exhibit E should be stricken as defamatory. The Seventh Circuit has "repeatedly and consistently held that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) (internal quotations omitted). Because Defendants' arguments are undeveloped, the Court does not strike Schmelzer's declaration on these bases.

However, Defendants also argue that the Court should not give any weight to certain paragraphs within Schmelzer's declaration because their inclusion is an attempt by Schmelzer "to create her own question of facts." Reply at 1. Specifically, Defendants argue that paragraph 4 should be stricken because it includes unsubstantiated claims about what "they [Lynlee and Scott] knew" and attempts to clarify her own testimony. Reply at 1 (citing R. 98, Exh. E, Schmelzer Decl. ¶ 4). Defendant objects to Schmelzer's statement in paragraph 5 that Schmelzer did "not believe [] to be true based upon her personal observations" Lynee's claim that Lynlee did not know that Schmelzer filed the complaint with the DOL. *Id.* at 1–2 (citing Schmelzer Decl. ¶ 5). Finally, Defendants argue that paragraph 9 should be stricken as hearsay and as contradictory to deposition testimony per the sham affidavit doctrine. Reply at 2 (citing Schmelzer Decl. ¶ 9).

The law is well-established that "in general, parties may not 'patch–up potentially damaging deposition testimony' with a contradictory affidavit." *Richards v. U.S. Steel*, 2015 WL 1598081, at *4 (S.D. Ill. Apr. 9, 2015) (citing *Com. Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.,* 259 F.3d 792, 799 (7th Cir. 2001)); *see also DF Activities Corp. v. Brown,* 851 F.2d 920, 923 (7th Cir. 1988) (noting that almost all affidavits submitted in litigation are drafted by the lawyers rather than by the affiants). To determine whether a contradictory statement constitutes an impermissible "sham," courts in this Circuit "examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury." *Arce v. Chi. Transit Auth.*, 311 F.R.D. 504, 510 (N.D. Ill. 2015) (citing *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007)). The sham affidavit doctrine applies "upon a threshold determination of a 'contradiction,' which only exists when the statements are 'inherently inconsistent'" and the discrepancies are "incredible and unexplained." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (quoting *Com. Underwriters*, 259 F.3d at 799). In contrast, when the change is "plausible and 'the party offers a suitable explanation such as 'confusion, mistake, or lapse in memory,' a change in testimony affects only its credibility, not its admissibility." *McCann*, 622 F.3d at 751 (citing *Commercial Underwriters*, 259 F.3d at 799).

Notably, the Seventh Circuit has made clear that courts should make a sham determination "with caution," as credibility and weight are generally issues of fact for the jury, and "we must be careful not to usurp the jury's role." *Gavin/Solmonese*

11

*LLC v. Kunkel*, 2019 WL 1125792, at *1 (N.D. Ill. Mar. 12, 2019) (internal citations omitted). The Seventh Circuit's decision in *Castro v. DeVry Univ., Inc.* elucidates this point. 786 F.3d 559 (7th Cir. 2015). The court observed that few honest witnesses testify at any length without at least occasional lapses of memory or needs for correction or clarification. *Id.* at 571–72. Disregarding as a sham every correction of a memory failure or variation in a witness's testimony requires "far too much from lay witnesses." *Id.* (citations omitted). An affidavit can be excluded as a sham only where the witness has given "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." *Id.* The care that *Castro* mandates in applying the sham affidavit doctrine dictates that a decision to invoke it should be left until the court is actually asked to decide whether "the only reasonable inference" is that the affidavit or errata sheet was a "sham," *id.* at 571, and therefore so inadequate as to fail to create a "genuine dispute," Fed. R. Civ. P. 56.

The Court agrees that Schmelzer's statement in paragraph 4 about what Lynlee and Scott knew is improper speculation. As noted above, evidence that is inadmissible at trial cannot be considered at summary judgment, and Federal Rule of Evidence 602 prohibits the introduction of evidence not supported by the witness's personal knowledge of the matter. Sentences in paragraph 4 in which Schmelzer speculates as to what Lynlee and Scott knew are stricken. However, to the extent statements in paragraph 4 differ from her deposition testimony, the Court does not

find the differences to be so egregious that they violate the sham affidavit doctrine. *See Castro,* 786 F.3d at 571–72.

As to paragraph 5, the Court agrees with Defendants that the first two paragraphs should be stricken, as they clearly attempt to create an issue of material fact. The first two sentences ("Lynlee Wessels claims . . . my personal observations.") are stricken. To the extent Defendants object to the rest of paragraph 5, the Court declines to strike the remainder of paragraph 5, as it is not clear that the information contradicts Schmelzer's deposition testimony; rather, it clarifies it, which is not prohibited by the sham affidavit doctrine. *See Castro,* 786 F.3d at 571–72. Similarly, given the high standard for striking inconsistent information contained in a declaration as a "sham," *see id.*, the Court cannot conclude that Schmelzer's declaration statements in paragraph 9 are "inherently inconsistent'" with her deposition testimony relating to her conversation with the DOL representative on August 3, 2017, nor are the discrepancies "incredible and unexplained," *McCann*, 622 F.3d at 751 (7th Cir. 2010). Indeed, Schmelzer explains why the testimony was "misleading" because she agreed with what was contained in a "small print narrative." Schmelzer Decl. ¶ 9. During her deposition, although she stated that she recalled telling the DOL investigator information read to her from a DOL report, she offered to explain during the deposition. R. 93, Schmelzer Dep. 78:7–79:3. It would have been better had her attorney cleaned up her testimony on her re-examination during her deposition, but the Court cannot find that the paragraph 9 of Schmelzer's deposition is "inherently contradictory" to her deposition testimony. Moreover, it is

not clear that Schmelzer's statements about what the DOL investigator told her during the August 3, 2017 call are offered for the truth of the matter asserted, and therefore they are not hearsay. FED. R. EVID. 801(c)(2). The Court declines to strike paragraph 9 of Schmelzer's declaration.

The Court having addressed those preliminary issues, now turns to the merits-based arguments in Defendants' motion.

## II.    Section 510 of ERISA (Count I)

In Count I, Schmelzer alleges that the Defendants, in violation of Section 510 of ERISA, fired her in retaliation for Schmelzer informing the DOL of Defendants' alleged ERISA violation. TAC ¶¶ 24–31.

Section 510 of ERISA provides in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because she has given information or has testified or is about to testify in any inquiry or proceeding relating to [ERISA] . . . .

29 U.S.C. § 1140.[4]

---

[4]Section 510 of ERISA also provides that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participate or beneficiary for exercising any rights to which he is entitled under the provisions of an employee benefit plan . . . .

Defendants argue that Schmelzer fails to produce any facts that Defendants had specific intent to deprive her of any right under the IRA account; rather, the facts demonstrate that Defendants were seeking loans to fund Schmelzer's IRA account. R. 92, Memo. Summ. J. at 4–6 (citing DSOF ¶¶ 24, 27, 33). Schmelzer does not dispute that she does not bring a claim under this section of ERISA. Memo. Resp. at 11–12. Rather, her Section 510 retaliation claim relies upon the prohibition against firing a person who has "given information . . . in any inquiry" related to ERISA. *Id.* Retaliation claims can be based on *either* of those "distinct abuses." *See Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 547 (7th Cir. 1994).

14

Section 502(a) of ERISA provides the civil cause of action for the private enforcement of the rights protected in Section 510. *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC,* 741 F.3d 819, 821 (7th Cir. 2014). A plaintiff may establish an ERISA violation using either the direct method of proof or the *McDonnell Douglas* approach. *Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 576 (7th Cir. 1998). To establish a prima facie case of a Section 510 violation under the *McDonnell Douglas* approach, a plaintiff must show that "1) she belongs to the protected class; 2) was qualified for her job position; and 3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate to prevent the use of benefits was present." *Isabell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) (internal citations omitted).[5]

Only the third element is at issue. Defendants argue that they are entitled to summary judgment because Schmelzer fails to present any facts that would allow a reasonable factfinder to find that (1) Schmelzer was fired, and (2) if she was fired, it was because she engaged in a protected activity under ERISA. R. 92, Memo. Summ. J. at 7–10. Schmelzer claims that the evidence supports that she was fired in retaliation for informing the DOL about Defendants' alleged ERISA violation and

---

[5]A court "need not determine whether a plaintiff has established a prima facie case where a defendant has advanced a legitimate, nondiscriminatory reason for its action." *Id.* (internal citations omitted). Defendants do not, however, argue that they advanced a legitimate reason for Schmelzer's termination, instead arguing that Schmelzer left voluntarily and was not in fact terminated. Memo. Summ. J. at 7–8.

raised an inquiry with Scott and Lynlee about AWC's alleged violation. R. 100-4, Memo. Resp. at 6–13.

The Court first considers the question of whether Schmelzer was fired, and finds that resolution of this issue presents a classic question of material fact that precludes the granting of summary judgment. Schmelzer insists that she did not voluntarily resign, but rather that she was terminated when she asked Lynlee if she wanted Schmelzer "to leave," to which Lynlee responded, "yes," and Scott thereafter asked for her Schmelzer's office key. Memo. Resp. at 10 (citing PSOAF ¶ 28[6]). Schmelzer also points to evidence that she intended to retire from AWC (Defs.' Resp. PSOAF ¶ 10), and that she told co-worker Mandy Holt, her neighbor, and her husband that she was fired on July 31, 2017, the same day Lynlee said "yes" in response to Schmelzer's question whether Lynlee wanted her to leave (*id.* ¶¶ 30–31). Defendants counter that Schmelzer admits that Lynlee never told her that she was terminated. Pl.'s Resp. DSOF ¶ 48. Defendants also rely heavily on Schmelzer's deposition testimony during which she agreed that a statement in a DOL report was correct: "P called and states that funds have been deposited and she is no longer with the company." Memo. Summ. J. at 8 (citing DSOF ¶ 59). As discussed above, the Court

---

[6]Defendants deny PSOAF ¶ 28, but do not cite any record evidence in support of their denial. Defs.' Resp. PSOAF ¶ 28. Local Rule 56.1 requires the nonmovant to cite to record evidence when disputing any statement of fact. N.D. Ill. Local R. 56.1(b)(3)(B). Courts in this District routinely deem facts admitted where the nonmovant fails to cite to admissible record evidence in support of the denial. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015) (affirming district court's discretion in deeming facts admitted where opposing party "failed to admit or deny facts and provided only boilerplate objections, such as 'relevance' . . . [and m]ost importantly, . . . failed to provide citation to any admissible evidence in support of his denials" in violation of Local Rule 56.1(b)(3)(B)). Because Defendants did not cite to any record evidence in support of their denial, PSOAF ¶ 28 is deemed admitted.

will consider Schmelzer's statements of additional fact that rely on her declaration, in which she explains that the DOL report was not a verbatim transcript of Schmelzer's conversation with the DOL representative, but that Schmelzer told the DOL representative that it was "her choice" to go into Lynlee's office and use the "f word" to prevent the DOL representative to feel guilty. *See supra* Section I; Memo. Resp. at 10 (citing PSOAF ¶¶ 33–34). It is a question for the factfinder, not the Court, to determine whether Schmelzer's explanation about her statement to the DOL representative is credible. *See Omnicare*, 629 F.3d at 704. Based on the conflicting testimony, a genuine issue of material fact exists as to whether Schmelzer was fired or whether she voluntarily left her employment with AWC.

Next, the Court considers whether Schmelzer was fired *because* she engaged in protected activity, by contacting the DOL or by raising an inquiry with Scott and Lynlee about AWC's alleged ERISA violation. Defendants argue that Scott and Lynlee did not know that Schmelzer filed the complaint with the DOL until after Schmelzer was terminated. Memo. Summ. J. at 9 (citing DSOF ¶¶ 38, 62).[7]

Defendants are right that, when the undisputed evidence supports that a defendant is unaware that an employee engaged in a protected activity, a subsequent adverse action cannot be considered retaliatory under Section 501. *Id.* (citing *Shah v. Eclipsys Corp.*, 2010 WL 2710618, *12 (E.D.N.Y. July 7, 2010)). But Schmelzer retorts

---

[7]Defendants also rely on the DOL report, which states that Schmelzer told the investigator that she left the Animal Wellness Center by choice and it "was in no way related to her contacting the DOL." *Id.* (citing DSOF ¶ 59). But as noted above, the Court considers Schmelzer's declaration in which she explains that this is not an accurate description of her conversation with the DOL investigator.

17

that circumstantial evidence in the record establishes that Defendants knew that Schmelzer was the most likely person to have reported Defendants to the DOL. Memo. Resp. at 7 (citing PSOAF ¶ 40). Schmelzer was most vocal about Defendants' failure to fund the pension fund, and Schmelzer's husband was the one who made the call that precipitated the meeting about the fund. Defs.' Resp. PSOF ¶¶ 4, 8. Schmelzer maintains that after her husband raised the IRA issue to Scott, Lynee's behavior towards her changed. Defs.' Resp. PSOAF ¶¶ 6, 12.[8] Schmelzer and her co-worker Jessica McCaslin observed that Lynlee stopped talking to Schmelzer directly after the July 8 meeting about the IRA, which created a different, more negative environment than before. *Id.* Schmelzer observed that throughout July, Lynlee gave Schmelzer the silent treatment, refused to walk with Schmelzer, closed the door in Schmelzer's face, gave her "a nasty face," would walk out of the room when Schmelzer walked in, communicated with Schmelzer through her co-workers, excluded her from meetings, and slammed doors in Schmelzer's presence. *Id.* ¶ 14.[9] This came to a boil on July 31, 2017 when once again, Lynlee refused to talk to Schmelzer while they were both standing at the reception desk. *Id.* ¶ 22. Schmelzer followed Lynlee into

---

[8]Defendants object to Schmelzer's statements of additional fact as argumentative. However, the statements of additional fact are near-verbatim transcriptions of the facts contained in the transcript of Schmelzer's deposition and the declaration of Jessica McCaslin. *Compare* PSOAF ¶¶ 6, 12 *with* Schmelzer Dep. Tr. 122:12–123:3 and McCaslin Decl. ¶ 8. As discussed above, the Court declines to strike McCaslin's declaration as hearsay. *See supra* Section I.

[9]Defendants also object to PSOAF ¶ 14 as argumentative and improperly based on Schmelzer's declaration. Apart from the statement that Lynlee "was openly hostile" to Schmelzer, the Court does not find the statements contained in PSOAF ¶ 14 to be argumentative, but rather observations of Lynlee's behavior towards Schmelzer. And as discussed above, the Court declines to strike Schmelzer's declaration under the sham affidavit doctrine. *See supra* Section I.

her office where Schmelzer asked Lynlee if Lynlee wanted Schmelzer to leave and Lynlee said "yes." *Id.*

True, Scott testified that he thought an employee other than Schmelzer was the one who made the complaint to the DOL. Scott Dep. at 235:19–22. Still, given the circumstantial evidence presented about the change in Schmelzer's work environment after the first meeting about the IRA contributions on August 7, 2017, viewing the evidence in the light most favorable to Schmelzer, a reasonable jury could infer that Lynlee and Scott did in fact know that Schmelzer made the complaint to the DOL. *See Heise v. Canon Sols. Am., Inc.*, 2018 WL 3533255, at *11 (N.D. Ill. July 23, 2018) (denying summary judgment in Title VII retaliation case where circumstantial evidence supported defendant-employer's knowledge of plaintiff-employee's complaint despite defendant-employer's denial of knowledge of those complaints).

Defendants do not dispute that they knew about Schmelzer's inquiry to Scott and Lynlee about the missing IRA payments. *See* Memo. Summ. J. at 10. Nor do they dispute that such an informal inquiry constitutes protected activity under Section 510. *Id.*; *see George v. Junior Achievement of Cent. Ind., Inc.*, 694 F.3d 812, 817 (7th Cir. 2012), *as amended on denial of reh'g* (Sept. 24, 2012). Defendants merely contend that Lynlee did not know what Schmelzer was referring to when she asked Lynlee "why the fuck are you not talking to me," so any purported termination could not be related to Schmelzer's complaints to Lynlee and Scott about AWC's alleged ERISA violations. *Id.* at 10 (citing DSOF ¶¶ 63–65). But the Court finds that the

circumstantial evidence discussed above may allow for a reasonable jury to find that Defendants terminated Schmelzer because she raised an inquiry to Lynlee and Scott about the missing IRA payments.

Next, Defendants argue that Section 510 does not provide for individual personal liability. Memo. Summ. J. at 10–11 (citing *Deming v. Am. Standards, Inc.*, 905 F.2d 1124 (7th Cir. 1990); *Magnus v. St. Mark United Methodist Church*, 2010 WL 4177614, at *3 (N.D. Ill. Oct. 19, 2010)). Therefore, reason Defendants, Schmelzer's claim for personal liability against Lynlee and Scott fails to state a valid cause of action.

Schmelzer counters that a plain reading of 29 U.S.C § 1140 reveals that it imposes liability on any person that interferes with what employee is entitled to under a benefit plan. Schmelzer points out that while there is no Seventh Circuit decision on point, several out-of-Circuit district courts have held that individual liability exists against individuals that retaliate against an employee under Section 510. Memo. Resp. at 12–13 (citing *Narodetsky v. Cardone Indus., Inc.*, 2010 WL 678288, *5 (E.D. Penn. Feb. 24, 2010); *Olson v. Dex Imaging, Inc.*, 63 F. Supp. 3d 1353 (M.D. Fla. 2014); *Simmons v. Midwest Tel. Sales & Serv., Inc.*, 433 F. Supp. 2d 1007 (D. Minn. 2006); and *Roy v. Kimble Chase Life Sci. and Research Prods., LLC*, 2013 WL 3425201, *5 (E.D. Tenn. July 8, 2013)). Schmelzer argues that *Deeming* is not on point, as it involves an insurance company and contains no analysis. *Id.* at 14.

Although not argued by Schmelzer, Defendants' argument is better suited for a motion to dismiss than a motion for summary judgement. *See E.E.O.C. v. Mitsubishi*

*Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1069 n.2 (C.D. Ill. 1998) (legal question of whether pattern or practice case could ever be brought for sexual harassment claims was actually jurisdictional question for motion to dismiss, not one for summary judgment, since jurisdictional question did not require review of anything other than allegations of Equal Employment Opportunity Commission's (EEOC) complaint); *see also Int'l Bus. Lists, Ltd. v. Am. Tel. & Tel. Co.*, 878 F. Supp. 102, 104 (N.D. Ill. 1994) (summary judgment argument that essentially asserted that defendant's counterclaim failed "to state a claim upon which relief [could] be granted . . . should have been made as a motion to dismiss and addressing it as such). Defendants' argument is that Schmelzer cannot state a cause of action for individual liability against Lynlee or Scott because Section 510 does not allow for such a claim. At summary judgment however, the issue is not whether the plaintiff *has* stated a cause of action, but rather, whether the plaintiff has adduced evidence *in support* of its cause of action. Still, because such an argument is properly brought via a motion under Rule 12(b)(6) (and not Rule 12(b)(2)–(5)), Defendants have not waived it and the Court will consider it. *See Fed. Deposit Ins. Corp. v. Coleman L. Firm*, 2015 WL 1298650, at *2 (N.D. Ill. Mar. 19, 2015) (considering a Rule 12(b)(7) motion filed after defendants' answer because "[i]t would serve no purpose to require the defendants to raise this issue" or to refile it as a motion under Rule 12(c)); *Int'l Bus. Lists, Ltd.*, 878 F. Supp. at 105 ("[T]he substance of a motion rather than the form of a motion is controlling.") (internal citations and quotations omitted).

The Court agrees with Schmelzer that *Deeming* is not helpful, as it simply establishes that a prerequisite to a Section 510 claim is that the employer-employee relationship was changed in some way, but does not specify whether the *employer*, rather than an individual, must be the one to change the relationship and thus be the subject of a Section 510 claim. 905 F.2d at 1127. But the Court sees no reason to follow the decisions of out-of-Circuit district courts holding that individual liability exists under Section 510, rather than the one cited case from within this District holding that no such liability exists. *Magnus*, 2010 WL 4177614, at *3 ("Likewise, ERISA § 510 claims 'lie only against ... [an] employer' and do not provide for individual liability.") (quoting *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992)). Importantly, another case relied on by Defendants, which admittedly advances the same limited holding as *Deeming*, relies on a Seventh Circuit case supporting *Magnus*'s holding. Memo. Summ. J. at 11 (citing *Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 382 (3d Cir. 2002) (citing *Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996)). In *Anderson*, the Seventh Circuit found that, "§ 510 applies only in instances in which an *employer* wrongfully alters the employment relationship to prevent benefits rights from vesting." 99 F.3d at 856 (emphasis added). The Court thus relies on *Anderson* and *Magnus* to find that Schmelzer's Section 510 retaliation claim must be dismissed against Lynlee and Scott. Given that Schmelzer's TAC is the operative pleading, the dismissal is with prejudice. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818–19 (7th Cir. 2013) (affirming dismissal with prejudice of third pleading

attempt because "in court, as in baseball, three strikes and you're out"); *see also Ruiz v. Kinsella*, 770 F. Supp. 2d 936, 943 (N.D. Ill. 2011).

### III. 26 U.S.C. § 7434 (Count II)

In Count II, Schmelzer alleges that AWC violated 26 U.S.C § 7434, in that Edward purposefully, intentionally, and willfully directed AWC's accountant to file a false W-2 as part of Edward's coverup to prevent Schmelzer from learning that AWC used her payroll withholdings to pay company expenses and to conceal the fact that he did not effectuate any AWC IRA Plan matching contributions during the second half of 2016. TAC ¶¶ 30–47.

### A. Copy of the Complaint to the IRS

Section 7434 also provides that "any person bringing an action under subsection (a) shall provide a copy of the complaint to the Internal Revenue Service *upon the filing of such complaint with the court.*" 26 U.S.C. § 7434(d) (emphasis added). AWC argues that Schmelzer failed to follow Section 7434 as Schmelzer failed to provide a copy of each complaint to the Internal Revenue Service (IRS) upon the filing of each complaint with the court. Memo. Summ. J. at 12. In fact, argues AWC, nowhere in any of Schmelzer's three complaints does she state that she provided the IRS a copy of each complaint. *Id.*

Schmelzer acknowledges that the statute requires that a copy of the complaint be provided to the IRS. Resp. at 14. However, she asserts that the statue does not make that requirement a prerequisite to suit. *Id.* In any event, states Schmelzer, she has mailed a copy of the TAC to the IRS. PSOAF ¶ 27. AWC does not cite—and this

Court is not aware of—any authority in support of their argument that a Section 7434 claim must be dismissed if a plaintiff fails to provide the IRS a copy of each version of a complaint when it was filed with the court. *See* Memo. Summ. J. at 12; Reply at 4. As such, and because Schmelzer has provided the TAC to the IRS, the Court declines to grant summary judgment to AWC on the Section 7434 claim on this basis.

## B. Waiver of Rule 12(b)(6) Motion

Schmelzer argues that because AWC filed an Answer to the TAC, including Count II, and not a Rule 12(b)(6) motion to dismiss, it cannot challenge the sufficiency of Count II on a motion for summary judgment, as it is not one of the methods provided in Federal Rule of Civil Procure 12(h)(2), which states that "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Memo. Resp. at 14–15. But as noted above, the substance rather than the form of a motion is controlling; because AWC could raise its argument that Schmelzer fails to state a claim in a Rule 12(c) motion or at trial, the Court finds that it makes no sense to force AWC to do so rather than include it as part of its summary judgment motion. *See Fed. Deposit Ins. Corp.*, 2015 WL 1298650, at \*2; *Int'l Bus. Lists, Ltd.*, 878 F. Supp. at 105. Moreover, to the extent the Court evaluates whether it has subject matter jurisdiction over a portion of Schmelzer's claim, a motion under Federal Rule of Civil Procedure 12(b)(1) "may be raised by a party, or by a court on its own

initiative, at any stage in the litigation, even after trial and the entry of judgment."
*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)

### C. Standing and Failure to State a Claim

Section 7434 provides in pertinent part that "if any person willfully files a
fraudulent information return with respect to payments purported to be made to any
other person, such other person may bring a civil action for damages against the
person so filing the return." 26 U.S.C. §7434(a). So, to state a claim under Section
7434, "Plaintiff must allege: (1) Defendant issued an information return; (2) the
information return was fraudulent; and (3) Defendant willfully issued such a
fraudulent return." R. 83, Sept. 27, 2019 Order at 3 (internal citations omitted).

Defendants argue that Schmelzer failed to plead this claim with the
particularity required by Federal Rule of Civil Procedure 9(b). The heightened
pleading standard requires that a party making fraud allegations "state with
particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). This means
that a party must plead "the who, what, when, where, and how: the first paragraph
of any newspaper story*." U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853
(7th Cir. 2009).

Although seemingly a throwaway argument in AWC's briefs, the Court first
addresses the issue of actual damages because it implicates standing, which is a part
of subject matter jurisdiction. For a party to have "Article III standing, three
requirements must be satisfied: (1) she must have suffered an actual or imminent,
concrete and particularized injury-in-fact; (2) there must be a causal connection

between her injury and the conduct complained of; and (3) there must be a likelihood that this injury will be redressed by a favorable decision." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620–21 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

AWC argues that Schmelzer has failed to allege that she was injured or inconvenienced by the filing of the false W-2s. Memo. Summ. J at 14–15. But Schmelzer alleges because of the false 2017 W-2, she had to pay more in federal and state taxes than she would have paid had the W-2 been correct. TAC ¶ 45. Such an allegation is sufficient to adequately plead damages under Section 7434.

Schmelzer's alleged damages based on the filing of the false 2016 W-2 presents a problem, however. She also alleges that because she did not know that the money reported on the 2016 W-2 was not deposited into her IRA, she incurred damages. TAC ¶¶ 35–38. AWC points out that it deposited the missing IRA money into Schmelzer's IRA account, plus 10% above any amount contributed by Schmelzer and/or matched by AWC. Memo. Summ. J. at 14. The filing of a false information return in itself, without any specifics of the actual damages incurred by Schmelzer, is insufficient to confer Article III standing. *Queen v. Zefco Inc.*, 2020 WL 9350977, at *6 (D.S.C. June 18, 2020). Although *Queen* is a non-binding precedent, the Court finds the reasoning therein to be thorough and sound; although it was not cited by either party, the Court has an independent obligation to ensure that it has subject matter jurisdiction over a case. *Arbaugh*, 546 U.S. at 514 (courts "have an independent obligation to

26

determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party").

Here, because Schmelzer failed to allege a concrete injury incurred as a result of the fling of the false 2016 W-2, the Court finds that it lacks subject matter jurisdiction over her Section 7434 claim based on the filing of that W-2. The Court will therefore address AWC's remaining arguments for dismissal of the Section 7434 claim under Rule 12(b)(6) only as they pertain to the filing of Schmelzer's 2017 W-2.

First, AWC argues that Schmelzer alleges willfulness in a conclusory manner and has not adequately pled that Scott deceitfully or in bad faith caused an inaccurate W-2 to be filed for Schmelzer. Memo. Summ. J. at 13. Schmelzer alleges that when Scott took over AWC's financial responsibilities in mid-2017, he knew that Schmelzer's 2016 W-2 was false, but instead of correcting it, he caused inaccurate information to be included on Schmelzer's 2017 W-2 by "underreport[ing] Plaintiff's IRA PLAN contribution by the same amount that AWC falsely claimed Plaintiff contributed to the IRA PLAN in 2016 but instead was used by AWC to pay its general expenses." *Id.* ¶¶ 39–44. This allegation is not conclusory, but rather provides specifics as to Scott's intent to include false information on Schmelzer's W-2; it is specific enough to plead the requisite willfulness required for a Section 7434 claim. *See Luna v. 4C Kinzie Inv., LLC*, 2020 WL 30594, at *1 (N.D. Ill. Jan. 2, 2020) (plaintiffs sufficiently pled employer's willfulness by alleging employers "knew the information on the W-2s was false because the Plaintiffs accurately declared the

amount of their tip income and Plaintiffs reasonably believed the W-2s were accurate when they filed their income tax returns").

AWC cites only two cases in support of its argument that Schmelzer fails to allege willfulness. *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 777 (D. Md. 2014), held at summary judgment that no evidence existed that could allow a reasonable factfinder to find that the defendant-employer's policy of approximating server-employees tips on W-2s so that a close-to-accurate tip amount was reported to the IRS was a willful misrepresentation, especially where the policy was explained to the servers. Here, Schmelzer alleges misreporting of the IRA withholdings on Schmelzer's W-2 was not done for the purpose of attempting to accurately report information to the IRS, but rather to cover up where the money was going or had gone previously. *Mould* does not help AWC. Similarly, *Gidding v. Zurich Am. Ins. Co.*, 2017 WL 3394150, at *4 (N.D. Cal. Aug. 8, 2017) was decided at summary judgment, and the court found that no genuine issue of fact existed as to whether the defendant filed an information return reporting that it paid the plaintiff $100,000.00 as part of a medical malpractice settlement in 2011 when the payment was effectuated in 2014 because "the uncontroverted evidence suggest[ed] that [the defendant's] filing of the information return conformed to routine company practices and was motivated by an interest in complying with the law." *Gidding* also does not help AWC. The Court finds that Schmelzer has adequately pled that AWC willfully filed an inaccurate 2017 W-2 for Schmelzer.

Next, AWC argues that a Section 7434 claim cannot stand where the return correctly states the amount of payments made even if the wrong form is used to report the payment. Memo. Summ. J. at 13. Each case relied on by AWC is factually distinguishable. *Id.* (citing *Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648, 655 (E.D. Va. 2016) (filing of a Form 1099 instead of a W-2 is not actionable); *Tran v. Tran*, 239 F. Supp. 3d 1296, 1298 (M.D. Fla. 2017) (same). AWC does not explain what form should have been filed in place of the inaccurate 2017 W-2 alleged in the TAC.

AWC's argument that Schmelzer failed to plead specifics about the amount that should have been reported on the information returns also fails. Memo. Summ. J. at 13–14. Schmelzer alleges that her 2017 W-2 stated that her 2017 IRA Plan contribution was $633.27 when it actually was $1,294.91 (*id.* ¶ 43). It is hard to fathom how much more specifically Schmelzer could plead specific amounts.

Therefore, AWC's motion to dismiss Schmelzer's Section 7434 claim based on the filing of the 2017 W-2 is denied. The Court will allow AWC to move for summary judgment as to the Section 7434 claim based on the filing of a false 2017 W-2. *See Gordon v. Veneman*, 61 F. App'x 296, 298 (7th Cir. 2003) ("Permitting a second summary judgment motion is essentially a decision concerning case management, and district court judges are in the best position to make such decisions.") (citing *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)); *see also Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995).

## Conclusion

For the reasons given above, Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment on Count I, Schmelzer's Section 510 retaliation claim, is denied as to Defendant AWC. The Court construes Defendants' motion for summary judgment as a motion for failure to state a Section 510 retaliation claim against Lynlee and Scott individually, and grants Defendants' motion with prejudice. The Court dismisses Schmelzer's Section 7434 claim based on the filing of the 2016 W-2 for lack of subject matter jurisdiction. The Court also construes AWC's motion as one for failure to state a claim as to Schmelzer's Section 7434 claim against AWC based on the filing of the 2017 W-2. AWC's motion to dismiss Schmelzer's Section 7434 claim based on the 2017 W-2 is denied. AWC may to file a summary judgment motion on the Section 7434 claim based on the 2017 W-2. The parties are directed to submit a status report by August 16, 2021 advising the Court whether AWC intends to file a second summary judgment motion on the Section 7434 claim based on the 2017 W-2, and if not, proposed next steps and advising whether the parties are amenable to a referral to the Magistrate Judge to conduct a settlement conference. All claims have been dismissed against Lynlee and Scott; the Clerk of Court is instructed to terminate Lynlee and Scott as Defendants.

Dated: August 9, 2021

_____
United States District Judge
Franklin U. Valderrama